## City of San Antonio v. James Routledge.

Decided April 24, 1907.

**1.—Suit Against City—Mandamus—Parties.**

In a suit against a city to compel it by mandamus to pay an unsatisfied judgment, the mayor and aldermen are not necessary parties defendant.

**2.—Remedy by Mandamus—Pleading.**

The writ of mandamus only issues when there is no other adequate remedy and where justice and good government require a redress of the wrong. It lies to compel the performance of an act which the law enjoins as a duty resulting from an office, trust or situation. Whenever the law gives power to perform

some particular act or duty, and provides no other special legal remedy to enforce its performance, the writ will issue. Pleadings considered, and held sufficient to authorize the issuance of the writ.

### 3.—Same.

Mandamus is available when the officers of a municipality wrongfully neglect or refuse to levy a tax for the satisfaction of some demand already established, and for which the law requires a tax to be laid.

### 4.—Same—Same.

Under the provisions of the charter of the city of San Antonio it was the duty of the officers of the city to make provision for the payment of judgments against it. It appeared from plaintiff's petition that the city had not exhausted its taxing power. Held, that the tender by the city of a non-interest bearing warrant on a fund to be raised by the collection of back taxes at some indefinite time in the future, was not such a fair and reasonable payment as the plaintiff, a judgment creditor, was entitled to, and was not a performance of the duty imposed upon the city. While the charter required all debts to be paid by warrant drawn on some particular fund, it was contemplated that the fund should be in existence at the time the warrant was drawn.

### 5.—City—Levy of Tax—Discretion.

Where a city charter provided that the city shall make provision, by taxation or otherwise, for the payment of all indebtedness of the city, and that the Council shall provide for the payment of judgments in the levy of taxes next after the recovery of such judgments the city council has no discretion in the matter; said provision is mandatory.

### 6.—City—General Fund—Special Fund—Warrants.

Where the charter of a city provided that current expenses of any year should be paid out of the current revenue of such year, and also provided that the council might transfer any excess or a part thereof from the general fund to any special fund, after such transfer has been made warrants drawn against such special fund may be paid out of it, although not for current expenses of the fiscal year for which the general fund, from which the transfer was made, was provided.

### 7.—Pleading—Conclusions of Law.

In pleading it is never necessary to aver or charge what or how the law requires things to be done. The law is a conclusion which follows upon a statement of facts or arises by reason of such facts. Legal conclusions can only be alleged as conclusions following the statement of the facts upon which the alleged duty arises.

### 8.—City—Failure to Levy Tax—Mandamus—Special Purposes.

The fact that a city fails to provide for the payment of a judgment by the levy of a tax in the next fiscal year after the recovery of such judgment, as required by its charter, does not forever afterward absolve it from levying such tax, but it may be compelled by mandamus to do so in any subsequent year. The specification in a city charter of certain purposes, by way of illustration, for which special taxes might be levied, does not limit the taxing power of the city to such purposes only.

### 9.—Pleading—Special Exception.

In order for a pleading to stand against a special exception it should be certain to a certain intent.

### 10.—City Funds—Discretion of Council.

Where a city council is vested with discretion in transferring money from one fund to another, such discretion can not be interfered with by mandamus.

### 11.—Mandamus—Pleadings as Evidence.

In mandamus proceedings at common law every fact pleaded by plaintiff

and not specially traversed by respondent, was taken as admitted. Hence, in the absence of a showing that some fact specially traversed by the defendant was not established by undisputed evidence, it was harmless error, if error at all, to permit plaintiff to introduce his pleadings in evidence.

## 12.—Suit upon Judgment

Whenever it is made to appear that a second judgment may be in any respect more available than the first, an action upon the first may be maintained regardless of whether the judgment sued upon is dormant or not.

Appeal from the District Court of the Fifty-seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Joseph Ryan,* for appellant.—The alderman and members of the City Council being, under the charter, alone charged with the duty of performing the duties sought to be enforced, they were necessary parties to this suit; not having been made such in plaintiff's petition said exceptions should have been sustained. Gaal v. Townsend, 77 Texas, 465; Cullem v. Latimer, 4 Texas, 329; Watkins v. Kirchain, 10 Texas, 375; Gibbs v. Ashford, 66 S. W. Rep., 858; Pearsall v. Woolls, 50 S. W. Rep., 960; Texas Mex. Ry. v. Locke, 63 Texas, 627; Thomson v. Locke, 66 Texas, 391; 2 Spelling, Ex. Relief, sec. 1639.

Mandamus will not issue if there is another adequate and sufficient remedy, and petition therefor must affirmatively show that there is no such remedy. Screwmen's Association v. Benson, 76 Texas, 555; Plummer v. Gholson, 44 S. W. Rep., 1; Walker v. Barnard, 8 Texas Civ. App., 15; Clarke v. San Jacinto County, 18 Texas Civ. App., 207; Cochran v. Patillo, 16 Texas Civ. App., 458; Houston v. Smith, 12 Texas Civ. App., 120; Cullem v. Latimer, 4 Texas, 329.

The amount of levy is within the discretion of the City Council and can not be controlled by mandamus. City of Sherman v. Smith, 12 Texas Civ. App., 583; City of Denison v. Foster, 37 S. W. Rep., 167; Terrell v. Greene, 88 Texas, 546; Sansom v. Mercer, 68 Texas, 492; Cooley on Taxation, pp. 514, 518 and 519.

*James Routledge,* for himself.

NEILL, Associate Justice.—The nature and result of this suit is thus stated in the brief: "Original petition for mandamus was filed in the District Court of Bexar County on March 21, 1906. For the purpose of meeting defendants' exceptions, appellee (plaintiff below), on November 15, 1906, filed his first amended original petition, alleging in substance,

"(a) His residence and that of all the defendants, in Bexar County, and that defendant, city of San Antonio (appellant herein), is a municipal corporation, incorporated by special Act of the Legislature, August 13, 1870, and various amendments thereto; also by special Act effective July 1, 1903, under which it is now acting.

"(b) That he is the assignee and owner of an undivided one-half of a certain final judgment rendered on April 8, 1904, in the Fifty-seventh District Court of Bexar County, in favor of Anton Kneupper against the city of San Antonio, for three thousand dollars,

with 6 percent interest and costs; that the cause of action in which said judgment was rendered, was a suit for fifteen thousand dollars, for personal injuries alleged to have been sustained by Anna Kneupper, wife of Anton, on October 24, 1902, at the intersection of Duval and Oak Streets in said city.

"(c) That under the charter of said city, no execution shall ever be issued or levied by virtue of any judgment against the same; that all property belonging to said city shall forever be exempt from execution and sale, and no writ of garnishment shall ever issue against said city; but the City Council shall provide for the payment of judgments, in the levying of taxes next after final recovery thereof; and the city shall make provision by taxation, or otherwise, for the payment of any and all indebtedness due by the city. Also, the said city shall have power by ordinance, to annually levy and collect ad valorem taxes; to wit: For general purposes not to exceed $1 upon every $100 valuation, and for special purposes not to exceed· $1 upon the same valuation, provided that such special tax shall include all taxes levied for carrying on the city schools, whether levied by the City Council or any other board having the authority to do so, and provided further that the total tax rate of the city, including taxes for general purposes, special purposes, interest, sinking fund and schools, shall never exceed $2 annually on the $100 valuation of all property assessed, according to the last approved assessment roll of the city; that city warrants shall not bear interest; that said charter is made a public act and courts are required to take judicial notice of the same.

"(d) That on February 15, 1906, plaintiff filed petition with the City Council and mayor, requesting them to appropriate a sufficient sum out of current revenues as collected, to pay said judgment, and to levy a general or special tax for paying the same, and that it be paid out of taxes to be collected for the fiscal year which ended on May 31, 1906, which they failed and refused to do, but that said city offered to give plaintiff a back tax warrant, which would take its regular place behind other such warrants which had been issued by said city, payable out of taxes due prior to May 31, 1903, as collected in the future. That plaintiff declined to accept said warrant because the same would cease to bear interest, and because of the number of other such warrants issued against said fund he would have to wait until such warrants issued anterior to his had been paid; and because the holders thereof would have to wait more than three years before the same would be paid, and in his opinion, he would have to wait at least four years, thereby losing four years' interest on his money, and probably not be paid at all.

"(e) That afterwards, on February 28, 1906, the City Council made a levy for the fiscal year beginning June 1, 1905, and ending May 31, 1906, for general purposes, of ninety-seven cents, and for interest and sinking fund on the city's bonded debt, of forty-one cents, and two cents, for support of the Carnegie Library (all· on the $100 valuation), in addition thereto there was levied a special tax of thirty cents on the $100 valuation by the school board for support of the city public schools; making a total of ninety-seven cents

for general purposes, and seventy-three cents for special purposes. That the city therefore still had the power to levy three cents additional for general purposes, and twenty-seven cents for special purposes; that the taxable value of said city exceeded thirty-six million dollars, and therefore an ad valorem tax, either for general or special purposes, of two cents on each $100 valuation, would be more than sufficient to pay said judgment."

. The petition then names the mayor and aldermen of said city, but no where makes them parties to this suit,—the only defendants as such, being the city and certain parties interested in the other one-half of said Kneupper judgment.

"(f) That said judgment is dormant because no execution ever issued thereon, and section 41 of said charter provides that no money shall be drawn from the treasury, except in pursuance of a specific appropriation of the City Council.

"(g) Plaintiff prayed for the following relief, viz.: (1) Judgment against the city for one-half of said judgment, being the sum of $1,500 with 6 per cent. per annum interest from April 6, 1904, to date of trial, also for one-half of $44.25, costs of said suit; that such judgment in turn bear the same rate of interest until paid, be rendered in the name of James Routledge against the city for said amounts, as well as all costs that may be incurred on the appeal of this suit to the Court of Civil Appeals and Supreme Court. . . . (2) That the city be required to pay said judgment immediately out of any funds now in its hands, or may acquire in the future; and that all back taxes for the fiscal year 1906, and all back taxes for all fiscal years prior thereto, as they are collected, shall be applied to the payment of said judgment and any costs that may be incurred on appeal. (3) That the city and its mayor, be required to levy a tax for general purposes and also a tax for special purposes, or either or both a general and special tax sufficient to pay off said judgment with interest and costs, as well as costs on appeal, and that said city be ordered and required to levy taxes to the full limit of $100 for general purposes and $100 for special purposes, and all occupation and other taxes to the full limit allowed by law, and be required to devote all the excess of taxes and income received over and above its current expenses, to the payment of said judgment. (4) That mandamus issue requiring the said city, its mayor, aldermen, City Council, officials and agents and their successors in office, to carry out and perform said judgment and levy the taxes and make said collections, appropriations and payments. (5) For such general and special relief as plaintiff may be entitled to at law or equity."

Defendant city and its mayor filed answer on May 2, 1906, and excepted generally and specially to plaintiff's said petition, which exceptions were by the court overruled on November 21, 1906, to which ruling proper exception was reserved. They answered further, in substance:

(a) Admitting the incorporation of said city by Act of the Legislature, effective July 1, 1903, under section 125 of which, the same shall be deemed a public act and judicial notice thereof taken in all courts and places. That since June 1, 1905, Bryan Callaghan has

been the duly elected, qualified and acting mayor of said city, but denied that he has any power or authority to levy or collect taxes, either general or special, that duty appertaining to the City Council alone.

(b) An admission that on April 8, 1904, in the District Court of the Fifty-seventh Judicial District, Bexar County, said Anton Kneupper recovered final judgment against the city for $3000 with 6 per cent. interest from said date and costs of suit; said suit was filed on December 6, 1902, for the recovery of $15,000 for personal injuries alleged to have been sustained by Anna Kneupper (wife of Anton) on October 24, 1902, near the intersection of Duval and Oak Streets, because of their defective condition. That therefore said cause of action arose prior to the adoption of the city's present (1903) charter, though judgment was not obtained until afterwards.

(c) That prior to June 1, 1903, the charter of August 13, 1870, with the various amendments thereto, was in force, under section 253 of which the same was declared to be a public act "and may be read in evidence without proof, and judicial notice thereof shall be taken in all courts and places;" under section 45 of which, the City Council was given the power "to appropriate and provide for the payment of the debts and expenses of the city; the fiscal year to begin June 1, and terminate on May 31 following of each year." That therefore said Kneupper's cause of action arose during the fiscal year 1902, beginning on June 1, 1902, and ending on May 31, 1903. That by virtue of section 44 of said other charter, then in force, which authorized the City Council to provide by ordinance, special funds for special purposes, and make the same disbursable only for the purposes for which created, said Council did by ordinance passed and approved February 10, 1903, adopt a budget and appropriated and provided for payment of the debts and expenses of the city for said fiscal year 1902-3, in which the sum of $3,000 monthly, or $36,000 for the year, of the city's income, realized from taxation and other sources, was set aside as estimated contingencies for payment of floating debt, judgments, and other incidentals in all departments; and on November 17, 1902, the City Council, by ordinance, reaffirmed said budget ordinance of February 10, 1902, and created special funds as therein provided, among others, the said item of estimated contingencies for payment of floating debt, judgments and other incidentals in all departments, directing the issuance of warrants against the same and making said warrants a lien thereon. That afterwards, on March 4, 1903, the City Council adopted resolution directing the full and faithful carrying out of said ordinance of November 17, 1902.

(d) That by an ordinance passed and approved May 28, 1903, the City Council adopted a budget and appropriated and provided for the payment of the debts and expenses of the city for the fiscal year 1903-4, in which the sum of $2,000 monthly or $24,000 for the year, of the city's income realized from taxation and other sources was set aside as estimated contingencies for floating debt, judgments and incidentals in all departments; and on July 13, 1903, said Council by ordinance, amended and enlarged that of May 28, 1903, and au-

thorized the issuance of warrants against said items in said budget and made said warrants a lien against the same, but not changing said provision for $2,000 monthly and $24,000 for the year, for estimated contingencies and judgments as aforesaid.

(e) That the City Council, by ordinances, passed and approved May 27, 1904, adopted a budget and appropriated and provided for the payment of the debts and expenses of the city, for the fiscal year 1904-5, in which the sum of $1,000 monthly or $12,000 for the year, of the city's income, derived from taxation and other sources, was set aside as estimated contingencies for floating debt, judgments and incidentals in all departments; and by ordinance passed and approved June 27, 1904, said Council authorized the issuance of warrants against said items of said budget, and made said warrants a lien against the same.

(f) That under section 172 of said old charter, in force prior to July 1, 1903, the power of the city was limited to a levy of one per cent. on the city's total assessed value, for general purposes; and under section 106 of the present charter, said power was likewise limited to a levy of not exceeding $1 upon every $100 valuation, for general purposes. For the fiscal year 1902-3, said Council by ordinance of March 9, 1903, levied the full amount of said tax allowed for general purposes, to wit: $1 on the $100 valuation; said Council also for the fiscal year 1903-4, by ordinance of January 18, 1904, and for the fiscal year 1904-5, by ordinance of January 30, 1905, levied the said full amount of tax allowed for general purposes.

(g) That the cause of action recovered on by said Kneupper, one-half of which plaintiff claims to own, was founded on tort and not upon contract, and the City Council never pledged any special fund for payment thereof as a matter of contract, but same was provided for as well as any other similar judgments, out of the general fund, as before set forth. That under the general scheme of said charter, current revenues for each fiscal year are applied to current expenses and other charges against the city accruing during that fiscal year, and the income of the city for any particular year can not and ought not to be used for current expenses and other charges of a preceding year. That under section 52 of the charter now in force, the City Council has power to provide for the payment of current expenses of the city and direct that warrants be drawn for the same against the current revenues of the current fiscal year and every warrant so drawn against said revenues shall be a lien thereon, whenever the same may be collected, and said warrants shall be numbered and paid in the order of numbers and months, and warrants drawn for the current expenses of the first month of the fiscal year, shall be paid before any warrants drawn for the second month, and so on. That under section 112 of the present charter, the fiscal year begins on June 1 and ends on the following May 31, of each year. That section 112 of said charter provides that all creditors of said city having audited or established claims, shall be entitled to warrants drawn upon the city treasurer, which shall be numbered, designating the fund out of which the same are payable, and be paid in the order of their issuance by months and by numbers, so that no preference

shall be shown to any persons, and said warrants shall be drawn in the .same order as the claims may be audited, approved or established by the action of the Council or under its direction, or by the judgment of a court of competent jurisdiction. Under section 32 of said charter, the treasurer must receive all moneys paid to him on behalf of the city, and pay out same only upon warrants signed by the mayor and attested by the city clerk.

(h) That after the new charter became effective, the City Council, on July 13, 1903, adopted a resolution requiring the city auditor to separate and keep separate all back tax collections from and after said date, directing that said collections shall be used for the payment of indebtedness against the city, and in accordance therewith, and the provisions of said charter, said auditor did open a back tax account and created a fund known as a "Back Tax Fund," in which all moneys and taxes collected for fiscal years prior to May 31, 1903, were entered and paid, and out of which all indebtedness (other than bonded) incurred prior to May 31, 1903, were and are paid by warrants drawn as provided by charter, as fast as collected, and for each succeeding year a separate account and fund were and are kept in which all taxes and moneys collected for said particular fiscal year are paid, and out of which all indebtedness (other than bonded) incurred during such year, are paid by warrants drawn, as provided by charter, as fast as collected.

(i) That there were uncollected, on May 31, 1904, in taxes due prior to May 31, 1902, the approximate sum of $300,000, and for the fiscal year ending May 31, 1903, the sum of approximately $90,000, making a total of approximately $390,000, since which time there has been collected in back taxes for said years, prior to May 31, 1903, the approximate sum of $67,000, leaving uncollected and still due the approximate sum of $323,000 against which warrants have been issued, as by charter provided, of approximately the sum of $43,000 and approved vouchers for which warrants have not been issued, of approximately the sum of $11,000, making a total of approximately $54,000, which deducted from said sum of approximately $323,000, leaves approximately the sum of $268,000 still due and uncollected of said "Back Tax Fund." That the city is making all proper efforts to collect the same by suit and otherwise, and collections thereof are being made from time to time and as rapidly as possible, there having been collected for said "Back Tax Fund," during the fiscal year ending May 31, 1905, the sum of approximately $47,000, and during nine months of the following fiscal year and up to February 28, 1906, the further sum of approximately $19,000.

(j) That there were uncollected, on May 31, 1904, in taxes for the fiscal year 1903-4, the sum of approximately $99,000, since which time there has been collected for said year, up to May 31, 1905, approximately the sum of $38,000, and for the nine months ending February 28, 1906, approximately $4,000, or an approximate total of $43,000, leaving a balance uncollected of approximately $51,000, against which warrants have been issued, as by charter provided, of approximately $20,000, leaving still due and uncollected approximately $30,000, which the city is making all proper effort to collect, by suit

and otherwise, and collections thereof are being made from time to time and as rapidly as possible, there having been collected, as above stated, on said account during the fiscal year ending May 31, 1905, approximately $38,000, and during nine months of the following fiscal year, and up to February 28, 1906, the sum of approximately $4,000.

(k) That there were uncollected on March 12, 1906, in taxes, for the fiscal year 1904-5, the sum of approximately $61,000, and there is now in the treasury, subject to warrant, the sum of approximately $2,600 to the credit of said 1904-5 fund.

(l) Defendants therefore averred that ample provision has been made for the payment of said judgment, and said cause of action having accrued prior to June 1, 1903, and prior to July 1, 1903, when the present charter became effective, they say that same should have been paid out of said "Back Tax Fund" prior to June 1, 1903, and made and here make tender and profert of warrant in payment and satisfaction thereof out of said fund, and offer to pay same in due course as money is available therein; but should they be mistaken in their contention that same should be paid out of said fund for the year in which plaintiff's cause of action accrued, and the court should hold that such claim became liquidated and an obligation against the city, as of date of said judgment to wit: April 8, 1904, then they say that the same should be paid out of the income of and fund for the fiscal year 1903, which began on June 1, 1903, and ended May 31, 1904, and they make and here make tender and profert of warrant in payment and satisfaction thereof out of said fund and offer to pay same in due course as money is available therein. They further say that they have never refused, and have always been willing and ready to issue warrants for payment of said judgment out of the proper fund legally responsible therefor and to pay said money as money might become available in said fund, but that neither plaintiff nor his vendor have ever made demand therefor, but to the contrary, have refused to accept such warrant and advised said city, its mayor and City Council, on or about June 15, 1905, and again on or about February 15, 1906, in writing, that they refused to accept any such warrant. Defendants therefore say that having offered to issue proper warrant, and plaintiff and his vendor having refused to accept same, mandamus should not issue, directing payment out of revenues of current or any succeeding fiscal year, or directing levy therefor.

(m) They further plead, section 27 of the present charter, requiring the preparing of an annual budget of the current expenses of the city; and section 30 of said charter requiring that the assessment rolls and tax receipts must be made up and filed with the auditor, on or about April 1, of each year; and section 29 of said charter, providing that such budget must be transmitted to and acted on by the City Council, not later than March 1, of each year; and all taxes shall become due on April 1, and become delinquent on June 1 of each year, under sections 119 and 120 of said charter. That in accordance therewith, such budget was prepared, and by ordinance adopted July 3, 1905, for the fiscal year 1905-6 there was appropriated

the sum of $30,000 for contingent and miscellaneous expenses and warrants ordered drawn for same against the current revenues of said city in accordance with section 52 of said charter, and a special lien given thereon to secure payment of said warrants, which was amended by ordinance of February 26, 1906, and the same increased to $40,000. That by ordinance adopted February 28, 1906, the City Council fixed the rate of taxation for general purposes for the fiscal year 1905-6, at 97 cents on the $100 valuation. That the rolls and receipts for said fiscal year have long since been completed and are in the hands of the city collector for collection. That they and the City Council proceeded strictly according to charter and in the exercise of sound judgment and discretion, and the court has no power to require any additional tax levy for said fiscal year 1905-6 (which year will have expired and said rolls closed before this cause can be heard, and before, under the law, the same is returnable), and thus assume the functions of the City Council in the premises.

(n) That under section 51 of said charter, the City Council has the care, management and control of the city, its property and finances; that said city is constantly growing and it can not now be ascertained what the current expenses thereof for streets, lighting, fire protection, water, salaries and other things connected with the management and operating of said city, will amount to for the fiscal year beginning on June 1, 1906, or whether or not the same will require the full limit of $1 per $100 valuation, as fixed by charter, but same will be a matter of judgment and discretion on the part of the City Council then in office, and its exercise can not be controlled by mandamus. They, accordingly, say that mandamus ought not to issue commanding any tax levy in the future at this time.

(o) That under section 174 of the old charter, the City Council did have the right to annually levy and collect special taxes for special purposes, "not to exceed one per cent. on the property taxed annually." And under section 106 of the present charter, said Council has the same right to annually levy and collect a tax for special purposes not exceeding $1 on every $100 valuation; in accordance therewith the City Council, for the fiscal year 1902-3, did levy a special tax of 45 cents on the $100 valuation, for the purpose of paying interest on and creating a sinking fund to ultimately pay off its bonded debt called "sinking fund;" and a special tax of 20 cents on the $100 valuation for the support and maintenance of the public schools called "school fund;" and a special tax of 2 cents on the $100 valuation for the support and maintenance of the Carnegie Library, called "library fund." And for the fiscal year 1903-4, said Council levied a special tax for "sinking fund" of 45 cents; "school fund" of 28 cents; "library fund" of 2 cents; and for the fiscal year 1904-5, said Council levied a special tax for "sinking fund" of 44 cents; for "library fund" of 2 cents; and for "fire protection fund" of 3 cents, and the trustees of the Independent School District of San Antonio, levied a "school fund" tax of 32 cents; and for the fiscal year 1905-6, said Council levied a special tax for "sinking fund"

of 41 cents; for "library fund" of 2 cents; and. the trustees of the Independent School District levied a "school fund" tax of 30 cents, all on the $100 valuation; but defendants say that the levy of special taxes is a matter within the judgment and discretion of the City Council and no duty is devolved on said Council in this respect; that its exercise can not be controlled by mandamus and the court thus assume the function of the City Council in the premises. Wherefore they prayed judgment, for costs and general relief.

On November 20, 1906, plaintiff filed his first supplemental petition, containing general and special exceptions to the city's answer, which were by the court overruled, and by way of replication thereto, denied that the city, at any time, offered to give him a back tax warrant to be paid out of the back taxes that might be collected for the fiscal year ending May 31, 1904, but that such back tax warrant out of such fund now offered to be given by the city, does not amount to a reasonable and fair payment or attempted payment of the debt owing to plaintiff, because under the city's charter, said warrant would not bear any interest, would be numbered the last warrant in the list of warrants, and would have to take its turn in waiting for payment, and would only be paid when money was collected, from said "Back Tax Fund," and said back taxes would probably never be collected, or if collected at all, would not be collected in a reasonable time, and it would be about three and one-half years before plaintiff's warrant would be paid in its regular order; that the experience of the past has been that as the taxes became old in date, the amount collected became less and less per annum, and plaintiff says that in his judgment, if such back tax warrant were delivered to him, that it would be at least five years before the same would be reached for payment, and it is probable that it would never be paid at all. . . . He specially denies that the city, in any of its appropriations, ever set apart or appropriated any sum of money for the payment of the judgment in question, and if such appropriation was ever made, it was made to pay judgments other than the one claimed by plaintiff, and therefore an illegal preference was given to such other judgments in violation of section 112 of the City Charter, which provides that no preference shall be shown to any person. That it is a well known fact that a large portion of the taxes owing to the city each year, are not paid and become delinquent, and therefore a larger amount of taxes should be levied so as to obtain funds to pay plaintiff's claim. That a considerable portion of the taxes embraced in the "Back Tax Fund," which is composed of taxes owing prior to May 31, 1903, owing to defective assessments and other causes will never be collected at all. . . . If plaintiff accepted a warrant against said fund, he would thereby lose his interest and would have to wait at least two years for his money without interest, if collections proceeded to come in at the same rate as heretofore. . . . Therefore, if he accepted such a warrant, he would lose his interest from its date until paid, and have to wait at least three years for payment .and might never be paid, the payment of the warrant depending upon the contingency of the collection of said "Back Tax Fund." Plaintiff then admits that the city "attempted by resolution, to create a

Back Tax Fund to consist of all back taxes that may be collected, which *were* due prior to May 31, 1903, and to declare that the same, when collected, are to be applied and appropriated to the payment of all debts which the city owed for the fiscal years prior to May 31, 1903." . . . But said resolution, if effective, constitutes a misappropriation of the funds which should be used to pay plaintiff's debt, because it appropriates the revenues of the fiscal year ending May 31, 1903, to the payment of debts contracted in other years previous thereto. . . . And the issuance of such warrant would be ineffective and give no lien or right against said "Back Tax Fund," because no appropriation thereof has been ordered or made by ordinance, towards the payment of said debts existing prior to May 31, 1903, or this claim, and plaintiff, by said warrant would have no claim to payment out of said fund.

On November 21, 1906, defendant city filed its first supplemental answer containing general and special exceptions to plaintiff's supplemental petition, and denial of the allegations therein contained, which exceptions were by the court overruled and proper exception to said ruling reserved.

On November 22, 1906, plaintiff filed his first trial amendment alleging in substance: (a) That the judgment in Anton Kneupper v. City of San Antonio, was rendered on April 6, 1904; that motion for new trial was filed and overruled on May 31, 1904, and the city given twenty days after the end of that term of court, in which to prepare and file a statement of facts and bills of exception. (b) That the taxes for the fiscal year 1903-4, had already been levied when said judgment became final on May 31, 1904. (c) That it became the duty of the city to provide for the payment of said judgment in the levying of taxes for the next year, ending May 31, 1905, being the fiscal year of 1904. That on January 30, 1905, the City Council, by ordinance, levied the taxes for said fiscal year 1904, as follows: Ad valorem, for general purposes, $1 on each $100 assessed valuation; for interest and sinking fund on bonded debt, a special tax of 44 cents upon the same valuation; occupation and poll taxes, as provided by law; a special tax of 2 cents on the $100 valuation for the support and maintenance of the Carnegie Library; a special tax of 3 cents upon the same valuation for a fire protection fund; in addition thereto, the school board levied a tax of 32 cents upon the same valuation; that therefore, for said year there was levied $1 for general purposes and 81 cents for special purposes, and the city still had and could have levied special taxes to pay plaintiff's judgment, to the extent of 19 cents additional upon each $100 of the assessed valuation of property. (c) That the city now has a surplus of taxes collected for said fiscal year 1904-5, amounting to $2,600, which should be applied to the payment of plaintiff's claim, and therefore, plaintiff is entitled to, and prays for (in addition to the relief heretofore prayed for) a writ of mandamus, commanding the defendant to pay plaintiff's judgment out of the surplus fund of said fiscal year 1904, now on hand, and to also levy taxes for fiscal years 1902-3, 1903-4, 1904-5, 1905-6, 1906-7 and 1907-8, to pay his judgment, and for general relief,

and also that he be granted a lien on said surplus fund for fiscal year 1904–5, for his debt, etc.

On November 22, 1906, defendant city filed general and special exceptions to plaintiff's said trial amendment, which were by the court overruled, to which ruling of the court proper exception was reserved.

On November 23, 1906, trial was had before the court and judgment rendered: (1st). Confirming plaintiff's interest and title to an undivided one-half interest in and to said judgment rendered in favor of Anton Kneupper, amounting to $1,500 principal, interest thereon from April 6, 1904, amounting to $1,736.75, and the further sum of $22.10, one-half the costs of said old judgment, together with all costs of this suit, and that this judgment bear interest at the rate of 6 per cent. per annum until paid, except that the costs of the old suit and of this suit shall not bear interest; the court further finds that said Kneupper judgment is dormant, and further renders judgment as in an action of debt, for said sums of money. (2nd) The court finds that the city has in its hands a surplus of taxes collected for the fiscal year 1904–5, amounting to $2,600.89, and therefore orders a peremptory mandamus to issue to the defendant city of San Antonio, and unto Bryan Callaghan, Mayor thereof, and unto the board of alderman, the City Council of the city of San Antonio, and unto all the officials and agents of said city and unto their successors in office, commanding and requiring them and each and all of them, to forthwith pay unto plaintiff the amount of this judgment, out of said surplus fund of the fiscal year 1904–5; plaintiff is also granted a lien upon said surplus fund for the full amount of said judgment, interest and costs; and the said city of San Antonio, the board of alderman, the Mayor and the City Council and the members of said City Council and all of the officials and agents of said city, are enjoined from appropriating and paying out the said surplus fund of 1904 (except such balance of the same as may be over and above what is sufficient to pay plaintiff's judgment) to any other purpose than the satisfaction of plaintiff's judgment herein. (3rd) In the alternative, should plaintiff from any unforeseen event, fail to receive payment of all or any part of this judgment, out of said 1904–5 surplus fund, then the court directs that a peremptory writ of mandamus issue directed to the defendant, city of San Antonio and Bryan Callaghan as Mayor thereof, and the City Council of the city of San Antonio, and the members thereof, and the board of alderman and all the officials and agents of the said city of San Antonio and their successors in office, commanding them and each of them, to forthwith levy and collect a tax *nunc pro tunc* as of and for the fiscal year 1905, which ended May 31, 1906, in an amount sufficient (after making allowance for such taxes as will probably become delinquent out of same or remain unpaid) to promptly pay the amount of judgment with interest and costs herein rendered, in favor of said James Routledge, or any part of the same that may remain unpaid; said tax to be upon all of the property, real, personal and mixed, within the limits of the city of San Antonio, not

otherwise exempt by the Constitution and laws of the State of Texas, and the ordinances of the city of San Antonio, and to be an ad valorem tax for an amount not exceeding 3 cents upon every $100 valuation; and to be collected by the proper city officers and kept in a special and distinct fund; and plaintiff is granted a lien on the same to the amount of his judgment, and the city, its City Council, its Mayor and all of its officers and agents, and their successors, are enjoined from appropriating or using said fund for any other purpose than the payment of plaintiff's judgment, until after the full payment thereof, and as soon as a sufficient amount is collected in said fund, the same shall be at once applied to the payment of said judgment, principal, interest and costs; and a peremptory mandamus is directed to issue to the parties above named, commanding them to put all of the provisions of said judgment into effect, and to carry out the same and to require such payment thereof.

As this statement is accepted by the appellee Routledge, with this amendment: "Plaintiff alleged 'that Anton Kneupper on April 8, 1904, recovered judgment against the city of San Antonio for the sum of three thousand dollars, principal, together with interest on the same at 6 per cent. per annum from said date until paid, and for all costs of suit, said costs amounting to $44.25.' 'That James Routledge is the owner of one-half of said judgment,'" it is adopted by us.

*Conclusions of Fact.* The evidence shows that the judgment sued on was recovered as alleged in plaintiff's petition; that the appellee, James Routledge, is the owner by assignment, of the interest therein as alleged; that said judgment has never been paid, and no provision of any kind has been made by the city or its Council for its payment, though payment and that provision for its payment be made, have been often demanded, as alleged by the plaintiff, such demands have always been refused by the city and its Council; with the exception, that appellant in its answer tendered plaintiff a warrant therefor on its alleged back tax fund; that there is not and never has been any money to the credit of such alleged fund out of which plaintiff's demand can or could have been paid, and it is improbable that there will be, within the period of three years from the date of the judgment in this case, if ever, any money in such fund to satisfy plaintiff's demand or any part thereof; that the city has not, at any time since said judgment was recovered exhausted its taxing power, and has a surplus of taxing power to raise money by taxation sufficient to pay off said judgment; and that the city has on hand a surplus of money collected for the fiscal year of 1904–5, amounting to $2,600.89. Other facts proved will be stated in considering the assignments.

*Conclusions of Law.* 1. The first, second and third assignments of error complain of the court's overruling certain special exceptions, mentioned in the assignments, to plaintiff's petition. Under these

assignments the proposition, which is pertinent to every one of them, advanced is: "The aldermen and the members of the City Council being, under the charter, alone charged with the duty of performing the duties sought to be enforced, were necessary parties to the suit, and, not having been made parties, the exceptions to the petition on that ground should have been sustained." While the petition states the names of the persons composing the Council, it does not make them parties, nor ask for any relief against them. The inhabitants of the city of San Antonio are constituted a body politic and corporate, incorporated by the name of the city of San Antonio and by that name are required to sue and be sued, plead and be impleaded in all courts. Special Laws, 28 Leg., 322. The cause · of action alleged, is against the city of San Antonio and not against its City Council or its members in their individual capacity. As is said by Abbott on Municipal Corporations, sec. 1162, "The proper party defendant is that one against whom the right of action exist, and where the power to sue and be sued is given, the corporate name alone should be used or that one which is specially designated by statutory provisions, if any. Public officials are not proper defendants unless so required or permitted by statute in a case brought against the corporation which they represent." See also City of Houston v. Emery, 76 Texas, 322; and Loughran v. City of Hickory, 129 N. C. 281, 40 S. E. Rep., 46, cases similar to this, which hold that the members of the City Council were not necessary parties. In the Emery case it is said: "The writ" (mandamus) "which the judgment directs to issue will be obligatory on the municipal board—city council, composed of the Mayor and aldermen—in office when the judgment was rendered, and on their successors. If, for failure to comply with the command of the writ directed to issue, it shall become necessary to proceed against the individuals composing the City Council, the court below will have ample means to ascertain who they are, and power to take such steps as may be necessary to enforce its judgment."

The question here presented bears no analogy to that decided in Gaal v. Townsend, 77 Texas, 464. That case was not against a corporation; but the cause of action was against the board of County Commissioners by a member thereof who had been wrongfully removed therefrom by the board itself, which refused to recognize him any longer as a member or permit him to participate with its members in the discharge of his official duties as a member thereof; and it was simply held that, in a proceeding for mandamus to compel the other members to accept the relator as a member, and allow him to participate in their deliberations and actions, all the members were necessary parties to the proceeding; for the obvious reason that the mandamus would be inoperative as against the members who were not parties to the proceeding, and its very purpose might, therefore, be unavailing.

The other cases cited by appellant to support its contention under this assignment (Cullen v. Latimer, 4 Texas, 329; Watkins v. Kirchain, 10 Texas, 375; Gibbs v. Ashford, 66 S. W. Rep., 858; Texas Mex. Ry. v. Locke, 63 Texas, 627; Thomson v. Lock, 66

Texas, 391) are wholly foreign to the question. Some of them are ruled by the principle, which obtains under our system of jurisprudence, that third persons claiming an interest in the subject-matter which may be affected by the judgment must be joined as respondents in mandamus proceedings, without regard to the validity of their claim, which will not be adjudicated in their absence.

2. The fourth special exception to plaintiff's petition is, that it does not appear therefrom that this judgment cannot be paid out of the current revenues of the city and no necessity is shown for the issuance of a writ of mandamus compelling an extra or special tax for its payment; and the fifth exception is, it does not appear from the allegations of said petition that the tax levy therein mentioned for general purposes is not sufficient to pay the current expenses of the city and at the same time pay plaintiff's judgment. The fourth and fifth assignments respectively complain of the court's overruling these exceptions; and the proposition asserted under them is: "Mandamus will not issue if there is another adequate and sufficient remedy, and a petition therefor must affirmatively show that there is no such remedy."

The writ of mandamus only issues because there is no other adequate remedy, and where justice and good government require a redress of the wrong. But it lies to compel the performance of an act which the law enjoins as a duty resulting from an office, trust or situation. Whenever the law gives power to perform some particular act or duty, and provides no other special legal remedy for its performance, the writ will issue. The charter of the city of San Antonio inhibits the issuance of an execution or writ of garnishment upon a judgment against it, and exempts all its property from forced sale or from the operation of such writs. Yet the city in its corporate capacity is bound to pay off judgments rendered against it, and is given the power, to be exercised within the limits of the Constitution, to raise money by means of taxation to discharge such obligations. If it refuses to pay off a judgment rendered against it, or to exercise the power conferred by law to raise the money to discharge it, we can perceive no remedy plaintiff has unless it be by mandamus. It is said, "absolute and unconditional obligations, already ascertained and audited, are in themselves on their face an authority to the proper officer to pay them, and upon his refusal a mandamus will lie to compel the levy of a tax to pay them, if the public corporation meets its obligation by taxation. Therefore, a mandamus will issue to compel the levy of a tax to pay . . . a judgment, which is itself a judicial auditing of the claim." Merrill on Mandamus, sec. 130. Again, it is said by Cooley on taxation (3d ed.) p. 1361: "The remedy" (mandamus) "is equally available where the officers of a municipality wrongfully neglect or refuse to levy a tax for the satisfaction of some demand already established and settled, and for which the law requires a tax to be laid. In such cases the remedy may be had on behalf of the State or the municipality concerned, or by any individual whose demand the tax should pay. Thus, if one has recovered a judgment against a municipality which can only be paid

by means of taxation, the levy of the tax to pay it may in a proper case be compelled. . . . If the amount of the demand is absolutely fixed and determined, as would be by a judgment, and the law makes it the duty of the proper officers to levy a tax for its payment as a settled demand, this is sufficient, and mandamus may issue if the performance of the duty is neglected or refused."

Now, do plaintiff's allegations show that he has no other remedy? He alleges in substance: That a judgment was rendered on April 8, 1904, against the city of San Antonio, and that he is the owner of one-half of such judgment; that the city filed a motion for a new trial which was overruled May 31, 1904, and that the judgment did not become final until then; that it became the duty of the city of San Antonio under its charter to provide for the payment of said judgment in the levy of taxes for the fiscal year beginning June 1, 1904, and ending May 31, 1905; that the city made no provision in the levying of taxes for said year, for the payment of the judgment; that it levied for said year a general tax of one dollar on the hundred dollars valuation for general purposes, and eighty-one cents upon the hundred dollars valuation for special purposes, and that it had a surplus of unexhausted taxing power to the extent of nineteen cents upon each hundred dollars valuation in addition to the foregoing, which amount, if levied, would be sufficient to pay plaintiff's judgment. That plaintiff had demanded payment from the city, and had requested it for each of the years following the year 1904 to levy a tax or make provision for the payment of said judgment in the levying of a tax for each year thereafter, and had requested the city to pay said judgment, which it had always refused to do, and that as no execution could be issued against the city of San Antonio, and no offset could be made against it, and no writ of garnishment could issue on the judgment, he had no remedy, other than as prayed for in the suit, to enforce the payment of his judgment. It seems to us that these allegations, when considered in connection with the principles of law stated, relieve the plaintiff's pleadings from the objections urged by the assignments; and if they are, with the other allegations in the petition, proved, he is entitled to writ of mandamus.

3. The sixth assignment of error complains that the court erred in overruling its seventh special exception to plaintiff's petition. The exception referred to in the assignment goes to that part of the petition which asks for a mandamus to compel the city to levy and collect sufficient taxes to pay plaintiff's portion of the judgment; and that part of the exception insisted upon is, that "it does not appear therefrom that, under the charter of the city, proper and sufficient levy may be made to pay plaintiff's claim after paying the current operating expenses of the city. It is provided by section 42 of the city's charter that "the council shall provide for the payment of judgments in the levying of taxes next after the final recovery of such judgments from the city." The charter confers upon the city, through its council, the power to annually levy and collect an ad valorem tax for general purposes, not exceeding one dollar for every one hundred dollar valuation, and for special pur-

poses, not exceeding one dollar upon every one hundred dollar valuation. 28 Leg. p. 341, sec. 106. It also provides that the current expenses of the city shall be paid by warrants drawn for same against the revenues of the current fiscal year, and that every warrant drawn against said revenue shall be a lien upon said revenues of said fiscal year whenever the same may be collected; and that warrants drawn for the current expenses of a fiscal year shall not exceed the amount of income for such fiscal year, and such income shall be based upon the assessed values, the tax rate thereon and other revenues of the city from other sources. The tax levied for general purposes would, when collected, be the current revenue of the current fiscal year out of which the current expenses for that year should be paid, and against which the warrants for such expenses are required to be drawn and upon which the holders of such warrants have liens which must be discharged by payments from such fund.

Now, does it not sufficiently appear from plaintiff's petition that a sufficient levy may be made under the charter to pay plaintiff's claim after paying the current operating expenses of the city? No one can foretell with absolute certainty what the current expenses of the city will be for any fiscal year. This can only be approximated. And when it has been shown that the city has not exhausted its taxing power, and has failed and refused to provide for payment of the judgment for two years, and still refuses to make provision for its payment, it occurs to us that enough is shown to entitle the plaintiff to a mandamus requiring payment of his judgment.

4. The seventh assignment of error is as follows: "The court erred in overruling defendants' first special exception to plaintiff's first supplemental petition." It is followed by this proposition: "Because the city charter expressly provides that obligations and debts of the city shall be paid by warrant, which must be paid in the order of seniority, no preference being shown, this is the only method by which plaintiff can be paid out of the treasury." The statement subjoined is: "Said exception is as follows: '1st. Said defendant excepts to so much of plaintiff's first supplemental petition as alleges that the issuance of a warrant is not a payment, because the charter of defendant provides the only method by which its obligations can be paid, and said charter provides that the same shall be paid by warrant, and the order and manner of their issuance, and if under the plan of payment provided by said charter, plaintiff's claim be deferred or delayed, the same, as all other claims, can only be paid in the manner prescribed by charter; and because plaintiff seeks to have his claim decreed and preference over others anterior in time.'"

To our minds the statement is not full enough to require us to consider this assignment. For it seems to us that the statement should not only show the allegations in plaintiff's supplemental petition to which the exception was directed; but also, that part of defendants' answer to which the part of the supplemental petition excepted to was pleaded in replication. For without this, unless we go to the record, it cannot be determined whether the court erred

in its ruling or not. But it is an assignment of error, and the nature of the case is such as we think requires its consideration. But before doing so, we must make the statement from the record, which should have been made in appellant's brief:

The defendant alleged in its answer that "after the present charter became effective, the City Council on July 13, 1903, adopted a resolution requiring the city auditor to separate and keep separate all back tax collections from and after said date, and that such collections should be used for the payment of indebtedness against the city, and in accordance therewith and with the provisions of said charter, said auditor opened a back-tax account and created a fund known as the back-tax fund in which all taxes and monies collected for fiscal years prior to May 31, 1903, were entered and paid, and out of which all indebtedness (other than bonded) incurred prior to May 31, 1903, were and are paid by warrants drawn as provided by charter, as fast as collected; and for each succeeding year a separate account and fund were kept, in which all taxes and monies collected for said particular year are paid, and out of which all indebtedness (other than bonded) incurred during such year, are paid and warrants drawn as provided by the charter, as fast as collected." The answer then alleges the amount of back taxes uncollected for each year succeeding the date of such resolution, ranging from $300,000 to $38,000 for the several years, and avers that there were at the time it was filed $2,600 to the credit of said fund for the year 1904. It then proceeds as follows: "Defendants therefore show unto the court, that ample provision has been made for the payment of said judgment, and said cause of action having accrued prior to June 1, 1903, and prior to July 1, 1903, when said new charter became effective, defendants say that same should be paid out of said back-tax fund prior to June 1, 1903, and defendants here and now offer to issue warrants in payment and satisfaction thereof out of said fund, and offer to pay same in due course as money is available therein. But should defendants be mistaken in their contention that same should be paid out of said fund for the year in which plaintiff's cause of action accrued, and the court should hold that said claim became liquidated and an obligation against the city as of date of said judgment, to-wit: April 8, 1904, then defendants say that the same should be paid out of the income of and fund for the fiscal year of 1903, beginning June 1, 1903, and ending May 31, 1904, and defendants here and now offer to issue warrants in payment and satisfaction thereof out of said fund, and offer to pay same in due course as money is available therein. Defendants say that they have never refused and have always been willing and ready to issue warrants for payment of said judgment out of the proper fund legally responsible therefor, and to pay said warrants as money might become available in said fund, but that neither plaintiff nor his vendor have ever made demand therefor, but to the contrary have refused to accept such warrant and advised said city, its Mayor and Council on or about June 15, 1905, and again on or about February 15, 1906, that they refused to accept any such warrant. Wherefore, defendants

say that having offered to so issue proper warrant and plaintiff and his vendor having refused to accept same, mandamus should not issue directing payment out of revenues."

In reply to this part of the defendant's answer the plaintiff, in his first supplemental petition, specially denied that the city ever, at any time, offered to give him back-tax warrant to be paid out of back taxes that might be collected for the fiscal year ending May 31, 1904; and alleged that such back-tax warrant tendered by the answer does not amount to a reasonable and fair payment or attempt at payment of the debt due plaintiff, because of the provision of the charter of San Antonio such warrant would not bear interest and when issued, would be numbered the last in the list of warrants, and would only be paid in event sufficient money should be collected from the back-tax fund to pay the same, which would probably not be collected, or if collected, not within a reasonable time, it appearing from defendants' answer that there are warrants drawn against such fund which would have priority to the one tendered him amounting approximately to the .sum of $20,000, and that at the rate of collection of the back taxes, it would be three and one-half years before the warrant tendered would be paid in its regular order.   It is to this part of plaintiff's supplemental petition that the special exception referred to in the assignment is addressed.

The question which arises from the assignment of error may be thus stated: Does the part of the supplemental petition to which the exception is directed state such matters, admitting them to be true, as rebut the force of the allegations in that part of the defendants' answer to which it is in replication?   Section 112 of the charter of the city provides that, "All creditors of the city having audited or established claims against the city shall be entitled to warrants therefor drawn upon the City Treasurer, which shall be numbered designating the fund out of which the same are payable, but such warrants shall not bear interest, and shall be paid in the order of their issuance by months, and by numbers, so that no preference shall be shown to any person; such warrants shall be drawn in the same order as the claims may be audited, approved or established by the action of the council or under its direction or by judgment of a court of competent jurisdiction."

As was held in Altgelt v. Campbell, 78 S. W. Rep., 968, "Whenever the demand has been definitely ascertained as prescribed by law (as was in this case by a judgment of a court of competent jurisdiction), and the duty is plainly incumbent upon a particular officer or officers of drawing, signing and attesting such warrant upon the treasurer for the amount due, a refusal to perform such duty warrants the interposition of the courts by mandamus to compel the discharge of such duty."   But can it be said that this duty is performed by drawing or tendering a warrant, when there is no fund *designated* out of which it is payable?   A negative answer only can be given this question.   For under the charter a warrant cannot be legally drawn without designating a *fund* out of which it is payable.

Webster defines "fund" as follows: "1. An aggregation or deposit

of resources from which supplies are or may be drawn for carrying on any work, or for maintaining existence. 2. A stock or capital; a sum of money appropriated as the foundation of some commercial or other operation undertaken with a view to profit; that reserve by means of which expenses and credits are supported; as, the fund of a bank, commercial house, manufacturing corporation, etc."

Can it be said that uncollected back taxes are, within the meaning of section 112 of the charter of San Antonio, a "fund" upon which a warrant can be drawn for the purpose of discharging a judgment against the city, which the judgment creditor must accept or take nothing? Strictly speaking a "fund" must have an actual existence, and, certainly a potential existence, before a warrant can be drawn upon it which a judgment creditor of the city can be compelled to accept in liquidation of his judgment. Such a creditor is no Lazarus waiting to be fed with the crumbs which may fall from the rich man's table; but is entitled to a seat at the table himself and partake of the fund of provisions thereon until his judgment is satisfied. When the city answers plaintiff's demand for his money by saying, "You may have a warrant for it upon the treasury to be paid out of the back-tax fund." He answers: "There is now no such fund in existence and it cannot be told when, if ever, it will come into existence. Year after year you have refused to satisfy or make provision for the satisfaction of my judgment; now, when you have or can legally raise money for its payment, I ought not to be put off with a warrant drawn against a fund that does not exist and may never come into existence." We believe the answer is a good one, and that the exception taken to it by defendant was properly overruled.

5. The eighth assignment of error is, "The court erred in overruling defendants' second special exception to plaintiff's first supplemental petition." The exception referred to is directed against that part of the supplemental petition wherein it is alleged that a considerable portion of taxes for the fiscal year ending May 31, 1904, owing to defective assessments and other causes, will never be collected at all, and that plaintiff would have to wait several years before he can collect, and will lose interest, etc. The exception being, "Because (a) the same does not show or give in detail what portion of said taxes are uncollectible, nor that after allowing for the same there will not be sufficient to pay all debts of any particular year out of the taxes for said year; (b) defendant has no power under its charter to pay in any other manner than prescribed thereby, and that said charter prescribes that all obligations must be paid by warrant which shall not draw interest, and plaintiff's recovery is conditioned upon the charter's method of satisfying the same."

This assignment is virtually disposed of by what has been said in considering the seventh. It must be observed that the supplemental petition is in reply to that part of defendants' answer which endeavors to show that a "fund" from the collection of back taxes has been created upon which the city has tendered the plaintiff a warrant in satisfaction of his judgment; and the allegations in the supplemental petition must be considered with a view to that

part of the answer. If the answer itself does not allege such facts as show that such a fund has been so created, it was unnecessary for the plaintiff to plead matters in avoidance of such allegations. If they tended to show the creation of such fund, it was only necessary for plaintiff to plead such matters, as would destroy such tendency. Now, when it is shown by the supplemental petition, taken in connection with the pleadings of both parties, that the charter of the city provides that money can only be appropriated by an ordinance passed by a two-thirds vote of the council, it is shown that the resolution appropriating back taxes when collected to the purpose of paying demands against the city, was ineffective and did not create a fund from which warrants issued for such indebtedness could be legally paid, or upon which warrants would be a lien. Or, if it be admitted that such a fund could be created by resolulution, if it were shown that the back taxes were collected in the same ratio in the future as they had been in the past, plaintiff would have to wait three years for his money to be paid upon a warrant issued upon such fund, it would be made to appear that it would be manifestly unjust to put him off with such a warrant, when it is shown that the city can make, under the power given by its charter, provision for creating a fund out of which his judgment can be paid at once, or, at least within a much shorter time than would be required to pay his debt from a fund realized from the collection of back taxes. This, in our opinion, was all that it was necessary for the plaintiff to show in rebuttal of the allegations in defendants' answer to which the supplemental petition was in replication. It was manifestly impossible for the plaintiff to take up the several items of back taxes due the city and allege which would not be collected and the reason why it could not be, or to say with any degree of certainty what proportion would be eventually collected. It was for the defendant to allege and show such facts in relation to the collection of the back taxes as would create a fund from which a warrant for plaintiff's judgment would be paid. For it was its duty to make provision for a fund against which a warrant could be drawn in satisfaction of such judgment. And it was enough for plaintiff to allege and show that, while it was in defendants' power to do so, no such provision had been made.

6. Again, it was objected to plaintiff's supplemental petition, that it did not specify what judgments were illegally paid, and preference shown; nor what assessments were defective. The overruling of exceptions on these grounds is made the basis of the ninth assignment of error. The proposition advanced under the assignment is: "The amount of levy is within the discretion of the City Council and cannot be controlled by mandamus." We fail to perceive any relation between this proposition and the assignment. But lest those of superior perceptive powers should see the relationship, and direct us to consider the assignment, we will say that the proposition cannot be maintained. For the city of San Antonio has no discretion at all in regard to levying taxes for the payment of judgments recovered against it. Its charter provides that "the city shall make provision, by taxation or otherwise, for the payment of all indebtedness of

the city," sec. 43. Again, it directs that "the council shall provide for the payment of judgments in the levy of taxes next after the final recovery of such judgments of the city." If these provisions be not mandatory, language is inadequate to express a command made by the Legislature. It is true that this power commanded by the Legislature is limited by the Constitution to the city's taxing power; but as long as there remains a surplus of the taxing power it is the bounden duty of the city, through its council, to obey such commands. Sandmeyer v. Harris, 7 Texas Civ. App., 519; City of Sherman v. Langham, 92 Texas, 13; Nalle v. Austin, 22 S. W. Rep., 673; Corpus Christi v. Woessner, 58 Texas 467; Harkness v. Hutcherson, 90 Texas, 386; 2 Cooley on Taxation (3d ed.), 1361, and authorities cited.

7. The tenth assignment of error complains of the court's overruling defendants' fourth special exception to plaintiff's first supplemental petition. The exception referred to is to that part of the petition which alleges that the sum of $54,000 in warrants has been drawn against the alleged "back-tax fund," and that, if plaintiff should accept a warrant to be paid from money which may be collected from back taxes, he would have to wait until the warrants already drawn have been paid, which would be two or three years, during which time he would be deprived of interest on his debt. Such exceptions are on these grounds: "(a) The present charter provides only the current revenues of any fiscal year can be used for payment of expenses for that year, and obligations in excess of such revenues are void; (b) warrants can only be paid in the order of their issuance, and warrants issued previously to any that may be issued to plaintiff must be first paid." The proposition advanced under the assignment is: "Under the charter of the city of San Antonio, only current revenues of any fiscal year can be used for expenses (whether current or otherwise) for that year."

Section 52 of the charter empowers the City Council, "To provide for the payment of current expenses of the city and direct that warrants be drawn for the same against the current revenues of the current fiscal year." Section 108 authorizes the council, when there is an excess in the general fund over current expenses, to transfer such excess or part thereof to any of the special funds. This, it seems to us, shows that appellant's proposition has its limitations. As long as the current revenue for any fiscal year remains in the general fund a warrant which is not for current expenses of that year cannot be drawn against or paid out of such fund. But when there is an excess in the general fund over the current expenses of that year and the City Council has transferred such excess to another fund, warrants drawn against the fund to which such excess has been transferred may be paid out of it, though such warrants are not for current expenses for the fiscal year for which the general fund, from which the transfer was made, was provided. But whether the City Council can be compelled to transfer such excess in the general fund to any particular fund, or be made to appropriate it or any part thereof to the payment of any

particular indebtedness of the city is another question which we will consider further on.

8. The eleventh assignment of error is: "The court erred in overruling defendants' fifth special exception to plaintiff's first supplemental petition." The propositions advanced under it are as follows: 1. "Under section 52 of the charter, current expenses for any fiscal year must be paid out of and shall not exceed the income thereof, evidenced by the general fund, any excess which cannot under section 108 be applied to payment of debts or obligations incurred in any other year; such excess being applicable only to the enlargement of special funds contemplated by charter." 2. "Section 45 of the old charter giving the Council authority to appropriate and provide for payment of the debts and expenses of the city, did not, as the present charter does, limit payment of debts of one year out of that year's income, but permitted the excess in general fund for any year to be applied to payment of claims against the general fund of any preceding year." The exception referred to in the assignment is as follows: "5th. Said defendant excepts to so much of said supplemental petition as complains of back tax fund consisting of all back taxes that may be collected and which were due prior to May 31, 1903, and alleges a misappropriation thereof, because (a) the present charter of said city so requires all income to be classified; (b) the former charter which ceased to be operative when the present charter became effective, and under which the taxes for all years prior to May 31, 1903, were levied and collected, did not so provide, and required the payment of debts to be made out of the income of any year as collected." The only statement subjoined to the propositions is a copy of the above exception. This is hardly a compliance with Rule 31 of this court. But as it is apparent that the exception relates to the allegations, "that such back-tax warrant out of such fund now offered to be given by the city, does not amount to a reasonable and fair payment, etc., and said back taxes would probably never be collected, or, if collected at all, would not be collected in a reasonable time, etc.," appearing in plaintiff's supplemental petition, we will give the assignment such consideration as we can, provided we can see any relation of the propositions to it. The first proposition seems a logical deduction from two sections of the charter mentioned in it. But we fail to see its application to the assignment. Conceding the truth of the allegations excepted to, does the verity of the proposition show that the plaintiff may be put off with a back-tax warrant in settlement of his judgment? It may show that the plaintiff is not entitled to mandamus to compel the defendant to appropriate an excess in the general fund, over the current expenses for any fiscal year for which such fund was created, to the payment of his demand; for, as it seems, that it is left to the discretion of the City Council to transfer such excess to any of the special funds, the exercise of such discretion cannot be prevented or controlled by mandamus. But it by no means follows from the proposition that the allegations excepted to in the supplemental petition do not show that mandamus may not issue to

compel the city to levy a tax for the purpose of creating a fund from which plaintiff's judgment must be paid. Nor can such a deduction be made from the second proposition, conceding that it is a logical sequence of section 45 of the old charter.

9. The twelfth assignment of error is as follows: "The court erred in overruling defendants' first special exception to plaintiff's trial amendment." The propositions asserted under this assignment are: 1. "The petition should have alleged wherein 'it became the city's duty to provide for payment of the judgment in question in the levy of taxes for 1904,' and the performance by appellee of all preliminary acts on his part giving him the right to demand such relief." 2. "The tax rate for 1904 being $1 per hundred for general fund,—the maximum allowed by charter,—the City Council was without power to levy more." The exception referred to in the assignment is as follows: "(a) The allegation that it became the city's duty to provide for payment of said judgment in the levying of taxes for the fiscal year 1904, is a conclusion of the pleader and fails to show wherein it was the duty of the city so to do. (b) That it appears therefrom that the maximum limit of taxes for general purposes for said year, to wit: $1 on each $100 valuation, was levied, and therefore the city could not, under its charter, make any additional levy for said year for any purpose whatever." The substance of the allegations at which the exception is aimed is, that plaintiff's judgment became final on May 31, 1904, and that under the charter of the city it became the duty of its Council to provide for its payment in the next levy of taxes following.

As to the first proposition. Having made this allegation, the plaintiff was not required to go further and aver "wherein it became the city's duty to provide for the payment of the judgment, etc." As is said by counsel for appellee in their brief, in reply to the proposition: "It is never necessary to aver or charge what or how the law requires things to be done. The law is a conclusion which follows upon a statement of facts or arises by reason of such facts. . . . Legal propositions can only be alleged as conclusions following the statement of the facts upon which the alleged duty arises. Therefore, the allegations in regard to this proposition are sufficient and the special exception was properly overruled."

Regarding the second proposition, it can make no difference that the tax levy for the fiscal year 1904 for general purposes was to the full limit allowed by law. The city failed to perform the duty imposed by its charter to make provision by the levy of a tax, or otherwise, for that year for the payment of the judgment. Having failed in this duty, it was incumbent on the city when levying the tax for the next fiscal year, after having been requested by plaintiff, to levy either a general or special tax for that purpose. It appears that in levying the tax for the fiscal year 1905, the city had an unexhausted taxing power for general purposes of three cents on the hundred dollars valuation and of twenty-seven cents on the same valuation for special purposes. A less tax than two cents on a hundred dollars of the taxable property within the city would have been sufficient to pay the judgment. Therefore, the city had the power to discharge

its duty to provide for the payment of plaintiff's judgment by levying such tax as was necessary to its liquidation. The failure of the city to discharge this duty by the exercise of the power given by law would render a judgment against it· nugatory at its own will or caprice, unless the owner of the judgment has the remedy of mandamus.

10. Under the thirteenth assignment of error the proposition is asserted that, "the levy of a special tax being within the discretion of the City Council, can not be controlled by mandamus." It seems to us that the assertion is fallacious. Whether a judgment recovered against a city for a tort be regarded as current expenses of the city, either for the fiscal year the cause of action accrued or for the year it was recovered, it can in no sense be regarded as current expenses of any ensuing fiscal year. If, then, the Council should fail to provide for the payment of the judgment in the levying of taxes next after the final recovery of the judgment; as is provided by section 41 of the City Charter, its payment could never be enforced against the will of the city if the levy of a special tax is within the discretion of its common council. For as such judgment is not current expenses for any fiscal year ensuing the one during which it was rendered, and as the levying of the general tax is for purpose of raising current revenues for the current year for the payment of current expenses of such fiscal year, against which current revenues every warrant for such current expenses is a lien, it necessarily follows that such judgment can only be paid from revenues raised by a special tax. Clearly, if a city fails to provide for the payment of judgments in the levying of taxes next after the final recovery of such judgments it is not ever afterwards absolved from levying taxes for their payment, but can be compelled by mandamus after such failure, if it persists in it, to discharge such duty by levying such tax, though the levy be a special tax for the special purpose of paying off such judgments. The reference in the City Charter to certain special purposes for which a tax shall be levied—such as borrowing money for permanent improvements, to pay interest and sinking fund on improvement bonds, etc.—does not limit its power of levying a special tax to such purposes, for it does not purport to enumerate all the special purposes for which such a tax may be levied.

11. The fourteenth assignment of error complains of the court's overruling the third special exception to plaintiff's trial amendment. The exception referred to is directed against that part of the amendment wherein it is alleged that the city has a surplus of the fiscal year of 1904 amounting to $2,600, which should be applied to plaintiff's debt. The defect pointed out by the exception is, that it does not appear that such surplus will not be exhausted by claims against or obligations of the city pending or not established or vouched or pending. The allegations in the trial amendment should be viewed in the light of the allegation in defendant's answer "that there is now in the treasury, subject to warrant, the sum of approximately $2,600, to the credit of the general fund of the fiscal year 1904-5." Do the allegations in the trial amendment, when viewed

in this light, show the alleged surplus, and, if so, that it is subject to plaintiff's demand? The principle that a defect in a pleading can be supplied by inference does not obtain when such defect is pointed out by a special exception, the rule is that its allegations must be certain to a certain intent in order for the pleading to stand against such an attack. Viewing the pleading in the light of defendants' answer (which is more favorable to it than it would be if looked to alone), it is apparent that inferences must be liberally drawn from intendment in order to hold it good. Perhaps neither the plaintiff nor defendant knew such facts, as could be alleged with any degree of certainty, showing whether there will or will not be a demand or demands for current expenses for the fiscal year of 1904-5, which may be lawfully established on the $2,600 to the credit of the general fund of that fiscal year. And it should be certain there will be no such demand established against that fund before the City Council should even transfer that money from the general to any special fund. And when such transfer can properly be made, it will be, as we have before intimated, within the discretion of the Council to transfer it to any special fund it may deem proper, and the exercise of such discretion can not be interfered with by mandamus. We think, therefore, the assignment under consideration should be sustained.

12. As the propositions under the fourteenth assignment which are referred to for propositions under the fifteenth have been considered, it is unnecessary to take further notice of them. The additional propositions under this assignment are: (1) "The tax levies for the years 1902, 1903, 1904 and 1905, having already been made and the rolls closed, additional levy for said years can not be made," and (2) "The amount of levy in the future is a matter of legislative discretion with the Council and can not be controlled by mandamus."

If both these propositions are true the payment of plaintiff's judgment can not be enforced against the city, but it is simply discretionary with its council whether it will be paid at all. It is a maxim of logic, "that he who proves too much proves nothing." A municipal corporation is as much bound to pay a judgment which the law has authorized against it, as an individual one rendered against him. If a natural person has nothing to pay with he can not be made to pay; but as long as he has property subject to execution the law will take it from him and appropriate its proceeds to the payment of a judgment rendered against him under its authority. It was never contemplated by the law that a judgment rendered against a municipal corporation by its authority and under its sanction, that its payment should be arbitrary with the City Council. Though a city, like an individual, may be unable to pay a judgment, such a condition does not arise until the limit of its taxing power has been reached, or it has exhausted the power given it to raise a fund for its liquidation. Its taxing power is limited by the law, which not only gives it the power, but directs the mode of exercising it, to the limit, that it may meet and discharge the pecuniary obligations it has incurred or may incur. There is no discretion left the city in the exercise of this *power,* for the law directs and commands

its exercise. While the municipal corporation is empowered and directed to collect and pay off a judgment against itself, it has no more discretion in the matter than a sheriff has in collecting and paying money under an execution against an individual. In either case, as long as it is in the power of one or the other to obey the law which commands the collection and payment of the money, the duty to exercise such power is mandatory, and neither has any discretion in regard to its performance. True, for the years that are passed an additional tax can not be levied and placed on the rolls which are closed, but for unpaid obligations incurred during those years a tax may afterwards be levied, and placed on the rolls of the year when levied, to pay such indebtedness, and if the city refuses to make such levy, if a surplus taxing power remains, it can be compelled by mandamus to do so. City of Sherman v. Langham, 92 Texas, 13.

13. The sixteenth assignment of error complains that the court erred in permitting plaintiff to offer in evidence all the plaintiff's pleadings. The bill of exceptions taken to the action of the court upon which this assignment is predicated, shows that plaintiff offered in evidence and read all the pleadings of plaintiff and defendant, and that defendant objected to his offering in evidence his own pleadings, because not proper evidence. As to pleadings, the rules of the common law obtain in mandamus proceedings. At common law the respondent could not plead a general denial, but was required to plead specially by distinct traverse of the allegations of the writ or by way of confession and avoidance. Sansom v. Mercer, 68 Texas, 494. Hence, every fact pleaded by plaintiff not specially traversed by the respondent is taken as admitted. Pearsall v. Woolls, 50 S. W. Rep., 959; Jernigan v. Finley, 90 Texas, 205; May v. Finley, 91 Texas, 352. It is not shown by the statement subjoined to the proposition under this assignment that any allegation in plaintiff's pleadings was specially traversed which was not clearly proved by the undisputed evidence, nor is it so contended by appellant. In the absence of such a statement it can not be said that any harm was done the defendant by the court's permitting the plaintiff to read his pleadings in evidence. The same may be said in regard to the seventeenth assignment of error, under which the proposition asserted is that, "Plaintiff having failed to prove the allegations in his petition authorizing relief by mandamus, the court should have found for defendant." Certainly the assignment ought to have indicated, and the statement subjoined to the proposition under it showed what allegations, not confessed nor specially denied by the defendant, were not proved by the plaintiff.

14. The eighteenth assignment of error is as follows: "The court erred in finding that the judgment under which plaintiff claims is dormant, and in rendering judgment against defendant city of San Antonio as on a moneyed demand for $1,736.75 and $22.10 costs of the judgment under which plaintiff claims." And the proposition is: "The charter of the city of San Antonio (sec. 42) providing that no execution shall be issued or levied by virtue of any judgment recovered against the city, operates as a suspending of

article 2326a, Rev. Stats., so far as judgments against the city are concerned." If the proposition should be conceded to be true, it would not follow that it was error in rendering the judgment. Wherever it is made to appear that a second judgment may be in any respect more available than the first, an action upon it may be maintained regardless of whether the judgment sued upon is dormant or not. It was not made an objection to plaintiff's petition that a second judgment would not be more available to plaintiff than the first, nor is such objection made or advanced under the assignment. Molino v. Benavides, 94 Texas, 413. And as we are confined in our considerations of assignments of error to the propositions made under them, we are not called on to determine whether the judgment sought in this case would be more available to plaintiff than the first. Having the right to sue on the first judgment, plaintiff was entitled to recover interest due him on it as well as the principal. Bridges v. Samuelson, 73 Texas, 523.

15. Under the nineteenth assignment of error it is contended that the court erred in finding that the amount of costs on the judgment sued on was $44.25 and in rendering judgment in plaintiff's favor for half of such amount because no proof was adduced showing either the amount of the costs or that it was unpaid. It is enough to say in answer to this assignment, that in mandamus the allegations in plaintiff's petition which are not specifically denied by the defendant are accepted as true. Pearsall v. Woolls, supra; that plaintiff alleged the amount of the costs recovered by the plaintiff in the original judgment to be $44.25, and that he was the owner of one-half of the same; and that such allegation was not traversed by defendant's answer, nor was payment of it pleaded. Therefore, no evidence was required to sustain such allegations of the plaintiff in regard to such costs in order for him to recover them.

16. As we have held, in considering preceding assignments, that the court could not interfere by mandamus with the city's discretion in transferring the surplus money on hand for the year 1904 from the general fund to any special fund it chose to (Caven v. Coleman, 18 Texas Ct. Rep., 24), by compelling its appropriation to the payment of plaintiff's demand, it is unnecessary to give further consideration to the twentieth assignment of error, which complains of the court's mandamusing the defendant to so appropriate such surplus. This also disposes of the twenty-first assignment of error which complains of so much of the judgment as gives plaintiff a lien on such surplus for the fiscal year of 1904, and restrains the defendant from appropriating so much of it as is necessary to satisfy the judgment to any other purpose.

17. The question raised by the twenty-second, twenty-third, twenty-fourth and twenty-fifth assignments of error has been disposed of adversely to defendant in what we have said in considering previous ones.

The judgment in so far as it grants a peremptory mandamus against the city of San Antonio, Bryan Callaghan, its mayor, and the board of aldermen and City Council, commanding and requiring them and each and all of them to pay the plaintiff the amount of his

judgment out of the surplus fund of $2,600.89 of the fiscal year of 1904-5, and enjoining them from appropriating and paying out the said surplus fund of 1904 (except such balance of the same as may be over and above what is sufficient to pay plaintiff's judgment) to any other purpose than the satisfaction of plaintiff's judgment, is reversed, the mandamus to that extent set aside and denied; and the judgment in every other respect is affirmed.

*Reversed and rendered in part and affirmed in part.*

Writ of error refused.